FILED

2014 Jul-08  PM 01:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| ROBERT ELLIOTT, as the personal representative of the Estate of Nikki Listau, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) CASE NO. ) |
| MADISON COUNTY, ALABAMA; ADVANCED CORRECTIONAL HEALTHCARE, INC.; BLAKE DORNING; STEVE MORRISON; ARTHUR M. WILLIAMS, M.D.; PAMELA BATIE; _____ POTHIER; CHRISTINE COLLIER; VANESSA FIELDS; NICK WALLACE; _____ GUYTON; RANDY HOOPER; MICHELLE KIRK; DEONDRA MONTGOMERY; TANYA JONES; and TINA ADAMS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Robert Elliott complains of defendants, stating as follows:

### Nature of the Action

1.     This is a civil action brought by Elliott, whose decedent, Nikki Listau,

was denied certain constitutional rights by defendants while incarcerated in the Madison County Jail.   Specifically, defendants were deliberately indifferent to Listau's serious medical needs in violation of Listau's rights as a pretrial detainee under the Fourteenth Amendment to the United States Constitution.   Plaintiff also brings state law claims against the health care defendants.

## Jurisdiction and Venue

2.      This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3.      This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## Parties

4.      Robert Elliott is of legal age and a citizen and resident of the state of Alabama.  He resides in Madison County, Alabama.

5.      Defendant Madison County, Alabama is an Alabama county.  It is responsible for funding the Madison County Jail, including medical care at the jail. It contracted with defendant Advanced Correctional Healthcare, Inc. to provide

2

medical services at the Madison County Jail.

6.      Defendant Advanced Correctional Healthcare, Inc. (ACH) is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates in the Madison County Jail.

7.      Defendant Arthur M. Williams, M.D. is a physician who was employed by ACH to provide physician medical services and to be the director of the medical program for inmates at the Madison County Jail.

8.      Defendant Blake Dorning was the Madison County Sheriff at all relevant times.  As the sheriff, among other things, he is responsible for management of the Madison County Jail.  Defendant has a statutory duty under Alabama law to attend to the medical needs of inmates in the Madison  County Jail.  He is sued in his individual capacity only.

9.      Defendant Steve Morrison served as the jail administrator of the Madison County Jail at all relevant times.  He is sued in his individual capacity only.

10.     Defendant Pamela Batie was a correction officer at the Madison County Jail at all relevant times.  She is sued in her individual capacity only.

11.     Defendant ____ Pothier was a correction officer at the Madison County Jail at all relevant times.  She/he is sued in her individual capacity only.

12.     Defendant Christine Collier was a correction officer at the Madison County Jail at all relevant times.  She is sued in her individual capacity only.

13.   Defendant Vanessa Fields was a correction officer at the Madison County Jail at all relevant times. She is sued in her individual capacity only.

14.   Defendant Nick Wallace was a correction officer at the Madison County Jail at all relevant times. He is sued in his individual capacity only.

15.   Defendant _____ Guyton was a correction officer at the Madison County Jail at all relevant times. She/he is sued in her individual capacity only.

16.   Defendant Randy Hooper was a correction officer at the Madison County Jail at all relevant times. He is sued in his individual capacity only.

17.   Defendant Michelle Kirk is a Licensed Practical Nurse who was employed by ACH to provide nursing medical services for inmates at the Madison County Jail at all relevant times.

18.   Defendant Deondra Montgomery is a Registered Nurse who was employed by ACH to provide nursing medical services for inmates at the Madison County Jail at all relevant times.

19.   Defendant Tanya Jones is a Licensed Practical Nurse who was employed by ACH to provide nursing medical services for inmates at the Madison County Jail at all relevant times.

20.   Defendant Tina Adams is a Licensed Practical Nurse who was employed by ACH to provide nursing medical services for inmates at the Madison County Jail at all relevant times.

4

### Facts

21.   Nikki Listau was arrested at her home on March 10, 2013, at approximately 10:45 a.m.

22.   According to the autopsy, Listau suffered severe blunt force injuries, including a broken left femur and multiple rib fractures and died as a result of these injuries.

23.   It is not entirely clear at this time when Listau suffered these injuries.

24.   She could have suffered them before her arrest, during her arrest, or at the jail.

25.   Listau may have suffered these injuries as a result of falling off of her bunk while in a medical watch cell at the jail.

26.   Listau may have suffered these injuries as a result of seizures related to delirium tremens.

27.   In any event, according to the autopsy report, Listau died as a result of these injuries.

28.   According to hospital records, when Listau was booked into the jail, she was not ambulatory and required a wheelchair.

29.   Jail records show Listau was not even able to dress herself when she was admitted into the jail.

5

30. Either due to other health problems or due to blunt force injuries (alone or in combination with other health problems), Listau was in severe medical distress when she was admitted to the jail on March 10, 2013.

31. At the time Listau was admitted into the jail, Listau was suffering from alcohol withdrawal, also referred to as delirium tremens (DTs).

32. According to jail records, on March 11, 2013, at 11:19 a.m., approximately 24 hours after she was arrested, Listau was found unresponsive in her cell. She never recovered and was pronounced dead at the hospital on March 12, 2014.

33. Before she was found unresponsive, ACH and jail personnel had numerous opportunities to save Listau's life by sending her to the hospital.

34. Between booking on March 10 and shortly before 11:19 a.m. on March 11, 2013, all of the individual defendants except for Dorning were aware of Listau's condition yet failed to act.

35. Listau was obviously weak and suffering from serious health problems of a potentially life-threatening nature.

36. At the time of her admission to the jail, due to her severe blunt force injuries and/or other health problems, including DTs, Listau was in desperate need of medical care.

37. At a minimum, Listau was suffering from DTs at the time of her

6

admission to the jail.

38.    From prior jail admissions, Listau was known to be an alcoholic with a history of seizures during withdrawal.

39.    As a result of DTs and possibly other health issues, Listau was so weak she could not walk without assistance at the time of her admission to the jail.

40.    At the time of Listau's admission to the jail, due to DTs and possibly other health problems, Listau's need for medical care was such that it would have been obvious even to a layperson.

41.    Within a few hours of her arrest, on March 10, 2013, at approximately 2:00 p.m., Listau was placed in a medical watch cell on the instruction of ACH nurse Kirk. Listau was taken there by defendant Pothier, who observed Listau's condition and reported it to Batie, who in turn informed Morrison.

42.    In addition to defendant Kirk, ACH nurse defendants Montgomery, Jones, and Adams and jail physician Williams were also aware of Listau's condition on March 10.

43.    On the morning of March 11, 2013, at approximately 8:42 a.m., defendant Collier observed Listau naked on the floor of her cell, rambling incoherently, though at least responsive. Defendant Collier canceled Listau's scheduled court appearance that morning (to be done by video) and reported Listau's condition to defendant Fields and defendant Batie, who in turn informed ACH

7

personnel and Morrison.

44.   By 9:00 a.m. on March 11, Listau's terrible condition had become well known at the jail.  By personal observation or otherwise, numerous persons at the jail were aware of Listau's terrible condition, including all of the individual defendants except Dorning.

45.   Later on the morning of March 11, 2013, at approximately 9:40 a.m., defendants Wallace, Hooper, and Guyton found Listau on the floor mostly non-responsive,  picked her up and put her on the bed, and reported Listau's condition to Batie, who in turn reported Listau's condition to defendant Batie, who in turn informed ACH personnel and Morrison.

46.   Between 2:00 p.m. on March 10, 2013, and shortly before 11:19 a.m. on March 11, 2013, Listau's severe (and deteriorating) condition was observed by or known to numerous correction officials, including all of the individual defendants except Dorning.

47.   Despite Listau's condition, Listau received no treatment; defendants just watched Listau deteriorate and eventually die.

48.   By 11:19 a.m. on March 11, 2013, Listau was completely unresponsive and was found so.  She eventually died.

49.   As a direct and proximate result of the failure and refusal of the individual defendants except Dorning to secure emergency medical treatment for

Listau, Listau suffered pain and suffering and eventually died.

50.    All defendants were jointly and severally the proximate cause of Listau's pain and suffering and eventual death.

51.    The actions of jail and ACH personnel indicate systemic breaches of fundamental standards of correctional management and correctional health care.

52.    These breaches are indicative of inadequate policies and practices and inadequate training and supervision.

53.    The treatment of Listau falls far below the standard of correctional health care.

54.    Because Listau was not appropriately treated, she experienced unnecessary pain and suffering and eventually died.

55.    All of the individual defendants identified above acted with malice and/or with reckless disregard for Listau's constitutional rights.

56.    Listau's serious medical needs were ignored because of the customs or policies of defendants Madison County, Dorning, Morrison, Williams, and ACH of deliberate indifference to the serious medical needs of prisoners in the Madison County Jail.

57.    With deliberate indifference to the serious medical needs of inmates, defendants Madison County, Dorning, Morrison, Williams, and ACH failed to develop and implement adequate policies and procedures for the handling of inmates

9

with serious health conditions and failed to adequately train jail jailers and medical staff, with the foreseeable result that inmates such as Listau would not receive appropriate treatment.

58.    More generally, defendants Madison County, Dorning, Morrison, Williams, and ACH have established deliberately-indifferent customs or policies concerning inmate medical care, including but not limited to a custom or policy of delaying or denying necessary medical treatment to avoid liability for inmate medical bills.

59.    Defendants Madison County, Dorning, Morrison, Williams, and ACH were also part of an explicit or implicit agreement or plan to delay or deny necessary medical care to avoid having to pay for medical care for the inmate.  This plan included a custom or policy of delaying or denying necessary medical treatment by outside providers.  Defendants were aware this policy created a substantial risk of serious harm and inflicted unnecessary pain and suffering on inmates.

60.    Defendants Madison County, Dorning, Morrison, Williams, and ACH were on notice that the above-described customs or policies regarding medical care for inmates were harmful to the health of inmates and caused them to experience unnecessary pain and suffering due to delay and denial of necessary medical care. Defendants had such knowledge from prisoner complaints, communications from jailers, from their own observations, from common sense, from other lawsuits, and

10

in other ways.

61.     During 2013 at least 2 other inmates died while in the Madison County Jail under similar circumstances, Deundrez Woods (date of death August 21, 2013) and Tanisha Jefferson (date of death October 31, 2013).

62.     To a large extent, these constitutionally-deficient policies and practices regarding inmate medical care were created and implemented by the agreement between Madison County, Dorning, and ACH.

63.     The agreement, among other things, requires ACH to provide substantial insurance coverage, to name the county and the sheriff as additional insureds, and to indemnify the sheriff, the county, and their agents and employees in connection with any claim related to health care services.

64.     In whole or in part because of the agreement, Madison County, Dorning, and Morrison have failed and refused to address known systemic deficiencies regarding medical care at the Madison County Jail.

65.     Under the agreement, for Madison County to avoid liability for excess medical care expenses, it was necessary for defendants Dorning and Morrison and the jailers they managed to cooperate with ACH in controlling costs.

66.     Defendants Madison County and ACH and all individual defendants were aware the cost control measures implemented at the Madison County Jail by ACH resulted in the denial of constitutionally-required medical care for inmates with

11

serious medical needs such as Listau.

67.     ACH's business model, implemented in the agreement, succeeds by underbidding the competition and implementing severe cost control measures, the necessary result of which is unnecessary inmate suffering and liability claims (dealt with through liability insurance).

68.     The primary areas in which cost control measures were implemented were staffing, medications, and referrals to outside providers.

69.     In order to control costs, defendant ACH, with the knowledge and consent of defendants Madison County, Dorning, and Morrison, staffed the Madison County Jail inadequately, hired sub-standard medical personnel willing to put costs over inmate health and safety, denied inmates medications, and delayed or denied medically-necessary referrals to outside providers, including necessary medical treatment like that denied Listau.

70.     Alabama law vests final policymaking authority for inmate medical care in Dorning, as the representative of Madison County.

71.     Defendants Madison County and Dorning, in turn, via the agreement with ACH, have delegated final policymaking authority regarding inmate medical care to ACH, and, therefore, they are liable for ACH decisions.

72.     Defendant ACH acted through one or more individuals who acted as final policymakers for ACH, including defendant Williams.

73.     Defendant Madison County caused or contributed to the above-described customs or policies by not providing adequate funds for medical treatment for the prisoners in its custody, by continuing to retain ACH despite knowledge of ACH's policies and practices, and in other ways.

74.     All defendants acted jointly and in concert with each other. Each defendant had the duty and the opportunity to protect Listau, to obtain necessary medical treatment for Listau in a timely manner and/or to establish policies and procedures and implement training regarding such treatment, but each defendant failed and refused to perform such duty, thereby proximately causing Listau's pain and suffering and eventual death.

75.     All defendants, acting under color of state law, inflicted or caused to be inflicted cruel and unusual punishment upon Listau in violation of the Fourteenth Amendment to the United States Constitution. All defendants acted with deliberate indifference.

76.     All defendants acted with intent to violate Listau's constitutional rights or with reckless disregard for those rights, justifying punitive damages against the individual defendants and ACH.

77.     As a result of the conduct of defendants, Listau suffered physical and emotional injuries and then died.

## Count I - 42 U.S.C. § 1983 -
## Deliberate Indifference to Serious Medical Needs

78.     The individual defendants except Dorning, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Listau's serious medical needs as described above.  These defendants, despite knowledge of a serious medical need, took no action or clearly inadequate action and did thereby deprive Listau of her rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

79.     Defendants Dorning, Morrison, and Williams are supervisory officials for the jail and were responsible for development and implementation of policies and procedures for medical care at the jail and by action and inaction established the unconstitutional customs and policies described above.  These defendants did thereby deprive Listau of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

80.     Defendant Madison County intentionally refused to adequately fund medical care as described above with deliberate indifference to the serious medical needs of inmates such as Listau, had a policy of not adequately funding inmate medical care, and did thereby contribute to cause Listau's injuries and the individual defendants' denial of necessary medical treatment for Listau's serious medical need.

81.     Defendants Madison County and Dorning are also liable for the acts of

14

ACH and its policymakers, including Williams, as Madison County and Dorning delegated their final policymaking authority to them.

82.    As a result of the conduct of defendants, Listau was caused to suffer physical and emotional injuries and damages and died.

### Count II - Negligence / Wantonness

83.    The individual ACH defendants and unknown ACH employees involved with Listau's care owed a duty to Listau to meet the standard of care applicable to inmates and/or to make sure those under their supervision were trained adequately regarding the proper care of such inmates and that adequate policies and procedures regarding the proper care of such inmates were in place.  This standard of care required, among other things, appropriate monitoring of Listau's deteriorating condition and referral of Listau for emergency medical treatment outside of the jail. These defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Listau suffered unnecessary pain and suffering and died.

84.    Because ACH personnel were acting within the scope of their employment, defendant ACH is liable for their negligence and/or wantonness.

### Other Matters

85.    All conditions precedent to the bringing of this suit have occurred.

**Relief Sought**

86.    As relief, plaintiff seeks the following:

a.    That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

b.    That plaintiff be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

c.    That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

d.    That plaintiff be awarded the costs of this action, his reasonable attorney's fees, and his reasonable expert witness fees;

e.    That plaintiff be awarded appropriate declaratory and injunctive relief; and

f.    That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated: July 8, 2014.**

Respectfully submitted,

_____
Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street (35630)
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

**Jury Demand**

Plaintiff requests a trial by jury.

_____
Henry F. Sherrod III

17